UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| VIVIAN M. BENNETT,<br>    Third-Party Plaintiff,<br><br>v.<br><br>LYNDA BENNETT-HARPER,<br>    Third-Party Defendant.<br>-----------------------------------------------------------<br>VIVIAN M. BENNETT,<br>    Cross Claimant,<br><br>v.<br><br>BREONNA E. AGNEW,<br>    Cross Defendant. | CAUSE NO.: 2:10-CV-247-PRC |

**OPINION AND ORDER**

This matter is before the Court on a Motion for Summary Judgment [DE 44], filed by Third-Party Plaintiff/Cross Claimant Vivian M. Bennett on August 9, 2011. For the reasons set forth in this Opinion, the Court grants in part and denies in part the motion.

**PROCEDURAL BACKGROUND**

Midland National Life Insurance Company ("Midland National") filed its Complaint for Interpleader Relief against Breonna E. Agnew ("Ms. Agnew") and Vivian M. Bennett ("Mrs. Bennett") with this Court on June 18, 2010. That same date, Chief Judge Philip P. Simon granted Midland National's motion for leave to deposit its admitted liability in the amount of $46,192.36 with the Clerk of Court.

On August 23, 2010, Ms. Agnew filed an Answer to the Complaint. She also filed a Counterclaim for Declaratory Relief and Request for Hearing on the Merits against Midland National.

On September 13, 2010, Midland National filed an Answer to Ms. Agnew's Counterclaim.

On September 17, 2010, Mrs. Bennett filed an Answer to Midland National's Complaint for Interpleader Relief, a Crossclaim against Ms. Agnew, and a Third-Party Complaint against Lynda Bennett-Harper ("Ms. Bennett-Harper"). In the Crossclaim/Third-Party Complaint Mrs. Bennett alleges that Ms. Bennett-Harper and Ms. Agnew colluded in an attempt to obtain the proceeds of Sylvester Bennett, Jr.'s ("Mr. Bennett") life insurance policy, that Ms. Bennett-Harper breached her fiduciary duty as the attorney-in-fact under the Power of Attorney executed by Mr. Bennett, and that Ms. Bennett-Harper acted in bad faith and dishonestly. Mrs. Bennett seeks a finding that she is the proper beneficiary under the Policy and an award of attorney fees and costs, compensatory damages, and punitive damages.

Ms. Agnew and Ms. Bennett-Harper (jointly "Defendants") filed a response to Mrs. Bennett's Crossclaim and Third-Party Complaint on October 6, 2010.

On July 11, 2011, Chief Judge Simon granted Midland National's motion for a final decree of interpleader and dismissed Midland National from the present lawsuit, with prejudice, including dismissal of Ms. Agnew's Counterclaim against Midland National.

Mrs. Bennett, as Cross Claimant and Third-Party Plaintiff, filed the instant Motion for Summary Judgment on August 9, 2011, a Brief in Support, and the Insurance Claim File. Ms. Agnew and Ms. Bennett-Harper filed a joint response in opposition on September 7, 2011. Mrs. Bennett filed a reply brief on October 5, 2011.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## MATERIAL FACTS

Midland National is a corporation organized and incorporated in the State of Iowa and has its principal place of business in South Dakota. Mr. Bennett was a resident of Hazelwood, Missouri. At all relevant times, Mrs. Bennett, the Cross Claimant/Third-Party Plaintiff, was a citizen and resident of Portage, Indiana. At all relevant times, Ms. Bennett-Harper, the Third-Party Defendant, was a citizen and resident of Hazelwood, Missouri. Ms. Agnew, the Cross Defendant, is a citizen and resident of St. Louis County, Missouri. Ms. Bennett-Harper is Mr. Bennett's daughter from a previous marriage and is the step-daughter of Mrs. Bennett.

On February 21, 1986, Continental Western Life Insurance Company issued Policy No. 287727, insuring Mr. Bennett with a $100,000 death benefit. At the date of issue, the primary beneficiary of the policy was Mr. Bennett's wife, Mrs. Bennett. Midland National subsequently assumed Continental Western Life Insurance Company's Policy No. 287727 and renumbered it as Midland National's life insurance policy No. 1700852162 ("Policy").

On December 21, 2007, the Policy's death benefit was decreased to $50,000. The total amount of life insurance proceeds at issue is $46,192.36, which represents the $50,000 life insurance policy death benefit minus an outstanding policy loan of $5455.18, plus interest in the amount of $1647.54.

On September 29, 2009, Mr. Bennett executed a General Durable Power of Attorney for Sylvester Bennett, appointing his daughter Ms. Bennett-Harper as his attorney-in-fact. The Power of Attorney provides that both Mr. Bennett and Ms. Bennett-Harper were residents of Missouri at the time. The Power of Attorney provides that it is a "Durable Power of Attorney with general powers in reliance upon and in accordance with the provisions of the Durable Power of Attorney

Law of Missouri." Pl. Reply, Exh., p. 1. The Power of Attorney then specifically enumerates fifteen "express subjects or purposes with respect to which my attorney-in-fact is authorized to act:"

    1. To receive into her possession any and all items of personal property and effects that may be recovered from or about my person by any hospital, police agency, or any other person at the time of any illness or disability.

    2. To deposit funds into or withdraw funds from any account which I have at any financial institution, and to sign or endorse in my name any documents or instruments to effect such deposits or withdrawal.

    3. To deposit funds into or to withdraw funds from any annuity, pension, or individual retirement account which I own or in which I have an interest.

    4. To buy, sell, endorse, transfer, or borrow against any shares of stock, treasury notes, bonds, or securities.

    5. To purchase, agree to purchase, mortgage, encumber, sell, agree to sell, convey, agree to convey, quit claim or otherwise dispose of any personal or real property, and to sign all documents and contracts necessary to effectuate same.

    6. To apply for government and insurance benefits.

    7. To do all acts necessary to prepare and file income tax returns as they are due.

    8. To ask, demand, sue for, recover, collect and receive all sums of money, debts, dues, accounts, legacies, bequests, interest, dividends, annuities, and demands as are now or shall hereafter become due, owing, payable, or belonging to me and to take all lawful actions to recover same, and to compromise and to give discharges for the same.

    9. To enter into any safe deposit box rented by me or hereafter rented by me or for me or on my behalf, for the purpose of depositing therein or withdrawing therefrom any personal property, jewelry, money, documents, papers or securities, or other similar items.

    10. To borrow money on my behalf, and to secure such loans with the deposit of collateral, security agreements or mortgages, and to execute necessary notes, mortgages, deeds of trust, assignments and other instruments required in conjunction with any such loans.

11. To employ, retain, hire, and pay for from my funds, and discharge, when necessary, an attorney at law, for counsel, advice, representation, and litigation, when necessary for discharge of powers and authority granted to my attorney-in-fact by this document.

12. To hire and pay for from my funds the services of professional advisors, including, but not limited to, physicians, accountants and investment counselors, on my behalf and for my welfare.

13. To substitute and appoint from time to time a sub-attorney or sub-attorneys and said sub-attorney or sub-attorneys to have the same or, at the option of said attorney, more limited powers than the attorney-in-fact hereby appointed.

14. To execute all necessary instruments and to perform all necessary acts required for the execution and implementation of the foregoing powers.

15. To make any [sic] all decisions regarding healthcare, medical treatment, ventilators, and feeding tubes in the event I become incapacitated.

*Id.* The Power of Attorney further provides that it shall be governed by and construed in accordance with the laws of the State of Missouri.

Mr. Bennett, who suffered from peripheral T-cell lymphoma, was hospitalized in January 2010 at Barnes-Jewish Hospital in St. Louis, Missouri.

On January 18, 2010, Ms. Bennett-Harper submitted a beneficiary change request to Midland National, changing the primary beneficiary to herself and requesting to receive 100% of the proceeds from Mr. Bennett's life insurance Policy. Also on January 18, 2010, Ms. Bennet-Harper sent the Durable Power of Attorney form signed on September 29, 2009, naming Ms. Bennett-Harper as Mr. Bennett's attorney-in-fact.

On January 19, 2010, Ms. Bennett-Harper submitted another beneficiary change request to Midland National. This time, Ms. Bennett-Harper requested that the primary beneficiary be changed to her daughter, Ms. Agnew, and requested that Ms. Agnew would receive 100% of the proceeds from Mr. Bennett's life insurance Policy.

On January 20, 2010, Midland National sent Mr. Bennett a letter confirming receipt of the change request made by Ms. Bennett-Harper.

On January 22, 2010, Mr. Bennett died at Barnes-Jewish Hospital in St. Louis, Missouri.

Subsequently, Ms. Agnew filed a "Proof of Death Claimant's Statement" to Midland National dated March 30, 2010, submitting proof of Mr. Bennett's death and claiming her interest in the Policy proceeds. On April 27, 2010, Midland National sent a letter to Ms. Agnew, advising that Midland National was unable to continue processing her claim due to a review of the beneficiary change signed on January 19, 2010, by Ms. Bennett-Harper. Midland National wrote:

> We have advised her (Ms. Bennett-Harper) that it is our understanding that under the Missouri Statute regarding Durable Power of Attorney, she has the authority to act only on the specific subjects or purposes expressed in the power of attorney. Therefore, since the right to change the beneficiary was not expressly listed, the beneficiary change naming you as the primary beneficiary may be invalid.

(Claim File p. 144).[1]

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated –

---

[1] Although Cross Defendants have submitted a "Cross-Defendants' Response to Statement of Material Facts" they have not filed a Statement of Genuine Issues as Required by Local Rule 56.1. Moreover, they have not specifically designated evidence in support of the facts they assert in their "Cross-Defendants' Response to Statement of Material Facts" to be different from the material facts presented by Mrs. Bennett.

where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See*

7

Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

**ANALYSIS**

**A. Jurisdiction and Venue**

The parties agree that jurisdiction and venue with this Court are proper. Midland National filed its Complaint for Interpleader Relief in the Northern District of Indiana. The Court has subject matter jurisdiction of this lawsuit pursuant to 28 U.S.C. § 1335 because the adverse claimants are

8

of diverse citizenship and the amount in controversy exceeds $500.00. Venue is appropriate in the Northern District of Indiana pursuant to 28 U.S.C. § 1397.

### B. Choice of Law

The parties agree that Missouri substantive law applies in this case. Because this is a diversity-based statutory interpleader case, the Court applies the law of the forum state–Indiana–for choice-of-law principles. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). "Indiana choice of law doctrine favors contractual stipulations as to the governing law." *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002). The Power of Attorney contained a choice of law provision designating that the Power of Attorney "shall at all times be governed by and construed in accordance with the laws of the State of Missouri." Moreover, the Power of Attorney was executed in Missouri by Missouri residents. The acts alleged to have been taken outside the scope of the Power of Attorney also occurred in Missouri. Accordingly, the Court applies Missouri law to the construction of the Power of Attorney.

### C. Validity of Beneficiary Change

In the Motion for Summary Judgment, Mrs. Bennett argues that Ms. Bennett-Harper violated Missouri law by changing the beneficiary on the Insured's life insurance policy while acting as his attorney-in-fact when the Power of Attorney did not grant her the authority to do so and, thus, that the beneficiary change forms executed by Ms. Bennett-Harper are invalid.

Missouri Code § 404.710 defines the general powers that an attorney-in-fact is authorized to execute on behalf of a principal. *See* Mo. Rev. Stat. § 404.710. A power of attorney that grants "general powers" "with respect to all lawful subjects and purposes" extends the authority of the attorney-in-fact to "each and every action or power which an adult who is nondisabled and

9

nonincapacitated may carry out through an agent specifically authorized in the premises, with respect to any and all matters whatsoever, *except as provided in subsections 6 and 7*" of § 404.710. *Id*. at § 404.710.2 (emphasis added).

In subsection 6, the Missouri Code requires that the power to an attorney-in-fact to "designate or change the designation of beneficiaries to receive any property, benefit or contract right on the principal's death" must be "expressly enumerated and authorized in the power of attorney." *Id*. at § 404.710.6(6). *See Campbell v. Tenet Healthsystem, DI, Inc.*, 224 S.W.3d 632, 635 n. 3 (Ms. Ct. App. 2007) (recognizing that § 404.710.6 "lists a number of acts for which an attorney-in-fact must be granted specific authority"). Subsection 6 also provides that the power to an attorney-in- fact to "make or revoke a gift of the principal's property in trust or otherwise" must be "expressly enumerated and authorized in the power of attorney." Mo. St. Ann. § 404.710.6(3). Accordingly, in order for an attorney-in-fact to have the legal authority to change the designation of beneficiaries on a life insurance policy, the Durable Power of Attorney must expressly authorize this action.

The General Durable Power of Attorney for Mr. Bennett, dated September 29, 2009, naming Ms. Bennett-Harper as his attorney-in-fact, does not expressly authorize Ms. Bennett-Harper to designate or change the designation of beneficiaries to Mr. Bennett's life insurance policies or to make a gift of Mr. Bennett's property. Therefore, as Mr. Bennett's attorney-in-fact, Ms. Bennett-Harper is prohibited from changing Mr. Bennett's life insurance beneficiary designation at all, whether the change of beneficiary designation was to herself or to someone else, because there is no express delegation of authority in the Power of Attorney. *See* Mo. St. Ann. § 404.710.6(6).

Missouri Code Chapter 461 also addresses the limitation on an attorney-in-fact to change a beneficiary designation:

> An attorney in fact, custodian, conservator or other agent may not make, revoke or change a beneficiary designation unless the document establishing the agent's right to act, or a court order, expressly authorizes such action and such action complies with the terms of the governing instrument, the rules of the transferring entity and applicable law.

Mo. St. Ann. § 461.035.1. Again, the Power of Attorney signed on September 29, 2009, did not grant Ms. Bennett-Harper the authority to change Mr. Bennett's life insurance beneficiary designation nor did Ms. Bennett-Harper have such authority by a court order.

Powers of attorney are to be strictly construed. *Mercantile Trust Co., NA v. Harper*, 622 S.W.2d 345, 349-50 (Mo. Ct. App. 1981). Prior to the 1989 enactment of § 404.710, Missouri courts strictly required an express authority for an attorney-in-fact to act on behalf of the principal when "potentially hazardous powers," such as borrowing money on behalf of the principal, are involved. *Harper*, 622 S.W.2d at 349. Such powers cannot be inferred. *Id.*

Since the enactment of § 404.710, Missouri courts have repeatedly required that a grant of authority pursuant to § 404.710.6 be explicit in the power of attorney. *See Antrim v. Wolken*, 228 S.W.3d 50, 52-53 (Mo. Ct. App. 2007) (granting summary judgment in favor of the plaintiff when the power of attorney did not specifically authorize the attorney-in-fact to change the designation to herself); *see also In the Estate of Boatright*, 88 S.W.3d 500, 509 (Mo. Ct. App. 2002) (holding that absent written authority from the principal, an attorney-in-fact could not make a gift to himself or herself); *Williams v. Walls*, 964 S.W.2d 839, 848 (Mo. Ct. App. 1998) (holding that § 404.710.6 requires that certain enabling clauses "should be expressly enumerated and authorized"); *Arambula v. Atwell*, 948 S.W.2d 173, 177 (Mo. Ct. App. 1997) (holding that an attorney-in-fact breached his

fiduciary duty under a power of attorney when the attorney-in-fact's conveyance to himself constituted a gift, which was not authorized by the written power of attorney as required by § 404.710, notwithstanding a purported oral authorization of the gift).

Although *Boatright*, *Williams*, and *Arambula* are all cases in which the attorney-in-fact violated section 404.710.6 by making a gift to himself or herself, the cases are nevertheless instructive as to how the Missouri Court of Appeals has interpreted and applied § 404.710.6. In *Antrim*, the court wrote:

> Whether making or revoking a gift, creating or changing survivorship interests or *designating or changing the designation of beneficiaries*, the potential for abuse is high and the difficulty regarding testimony of the principal who has died is equally present. Thus, unless the power of attorney specifically authorizes the attorney-in-fact to engage in self-dealing, we will not imply such authority.

228 S.W.3d at 54 (emphasis added) (citing *Bienash v. Moller*, 721 N.W.2d 431, 435 (S.D. 2006); *First Colony Life Ins. Co. v. Gerdes*, 676 N.W.2d 58, 64 (Neb. 2004); *Praefke v. Am. Enter. Life Ins. Co.*, 655 N.W.2d 456, 460 (Wis. Ct. App. 2002)).

Defendants argue generally that the broad language of the Power of Attorney in this case granting to the attorney-in-fact legal authority with respect to "all lawful subjects and purposes" authorizes the attorney-in-fact to change a life insurance beneficiary. However, the explicit language of Missouri Code § 404.710.6 and § 461.035 defeat this broad argument.

Defendants also argue that an interpretation of the power of an attorney-in-fact which destroys the purpose of the power of attorney should be avoided, citing *Brookfield Production Credit Association v. Weisz*, 658 S.W.2d 897 (1983). *See* Def. Br., p. 5.[2] Indeed, the court in *Weisz* stated

---

[2] Defendants also represent that *Weisz* interprets the Missouri Code sections addressed in this section. *See* Def. Br., p. 5. However, *Weisz* does not discuss Missouri Code sections 404.710.6 or 461.035. Nor could it as both statutes were enacted in 1989.

that, "if the language will permit, a construction should be adopted which will carry out, instead of defeat, the purpose of the appointment." *Weisz*, 658 S.W.2d at 900 (quoting 3 Am. Jur. 2d Agency § 29-30 (1962)); *see also Allen ex rel. Dockins v. Hooe*, 11 S.W.3d 831, 834 n. 3 (Mo. Ct. App. 2000). In *Weisz*, the purpose of the two powers of attorney at issue was to "[apply] . . . to the Brookfield Production Credit Association . . . from time to time for loans which may be secured by personal or real property, or both, owned by [Francis or Bonnie], either jointly with [George], or separately, . . . ; and I do authorize [George] to execute valid and binding mortgages in my name, place and stead, conveying any property I may own separately or jointly with him as security for such loans." 658 S.W.2d at 898. Pursuant to the powers of attorney, George executed and delivered three promissory notes to Brookfield Production Credit Association, signing his own name and Francis or Bonnie's names as their power of attorney. The court found that the "power of attorney exercised in the case at bar was specifically set forth in the instruments. Moreover, the power was limited to a specific source and to a specific sum." 658 S.W.2d at 899.

In contrast in this case, the specific power to change the beneficiary of a life insurance policy was not included in the September 29, 2009 Power of Attorney naming Ms. Bennett-Harper as Mr. Bennett's attorney-in-fact, as required under the applicable Missouri Codes in effect at the time. Nor is there any language in the Power of Attorney, in light of Missouri Code § 404.710.6 or § 461.035, that could be construed to give Ms. Bennett-Harper the authority to execute a change of beneficiary designation form on Mr. Bennett's life insurance Policy.

Notably, Defendants identify no such language for the Court other than the general grant of legal authority with respect to "all lawful subjects and purposes." *Id*. Defendants suggest that it was Mr. Bennett's intention through the Power of Attorney to have Ms. Bennett-Harper handle all of his

affairs, as evidenced by the numerous empowering clauses listed therein. On the contrary, the specific enumeration of the fifteen powers granted to Ms. Bennett-Harper (set forth above), none of which was the explicit power to change the beneficiary on the life insurance policy, implies that Mr. Bennett specifically excluded all powers not listed in the Power of Attorney, including the power to change the life insurance policy beneficiary designation.

Finally, Ms. Bennett-Harper argues that she made the beneficiary change on January 19, 2010, to Ms. Agnew at the verbal request of Mr. Bennett consistent with her rights pursuant to the Power of Attorney, submitting only her own Affidavit in support. Therein, Ms. Bennett-Harper states:

> That on [January] 19, 2010, I executed at the direction of my father, Sylvester Bennett pursuant to his request under the General Durable Power of Attorney lawfully signed by him on September 29, 2009 a change of beneficiary of his insurance policy from Midland National Life Insurance Company, policy number 1700852162, assigning all benefits thereto unto his granddaughter, Breonna E. Agnew.

Cross Def. Br., Exh. A, ¶ 2. She also avers that the "beneficiary change request executed by me at Sylvester Bennett's direction occurred with no less than the presence of two (2) witnesses," *id*. at ¶ 3, and that Mr. Bennett "at the time of [his] death and prior thereto . . . was of sound mind and memory and competent to make decisions." Ms. Bennett-Harper does not identify the witnesses or provide affidavits from them. She also states in her affidavit that Mr. Bennett and Mrs. Bennett had been separated for over two years, that they were living separate lives in separate states, and that the Insured had contemplated and decided to divorce Mrs. Bennett but was unable to do so because of his physical illness.

However, there is no evidence of record other than Ms. Bennett-Harper's self-serving Affidavit regarding the status of the Bennett's marriage or any verbal statements made by Mr.

14

Bennett requesting the change of beneficiary, which is insufficient to raise a triable issue of fact. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001) (holding that self-serving affidavits alone will not raise a triable issue of fact to preclude summary judgment). Notably, Mrs. Bennett planned and paid for Mr. Bennett's memorial service and burial expenses in Missouri following his death, not Ms. Bennett-Harper, which may be inconsistent with Ms. Bennett-Harper's characterization of the marriage. Regardless, the status of the Bennett marriage is immaterial. The uncontroverted fact remains that Mr. Bennett made no beneficiary changes on his own accord to the Midland National life insurance policy, which designated his wife, Mrs. Bennett, as the primary beneficiary.

The only material issue is that Ms. Bennett-Harper did not have the express, written authority required by Missouri law to change the beneficiary of Mr. Bennett's Midland National life insurance policy from Mrs. Bennett first to herself and then to Ms. Agnew because the express written authorization was not provided in the Durable Power of Attorney as required by Missouri law. *See, e.g.*, *Estate of Herbert v. Herbert*, 152 S.W.3d 340, 353 (Mo. Ct. App. 2004) (relying on Missouri Code § 404.710.6(3) to reject the attorney-in-fact's argument that the principal's oral representation to make a transfer to the attorney-in-fact countermanded the provision in the power of attorney that prohibited the attorney-in-fact from making a gift to himself because "an attorney in fact is prohibited from making a gift of the principal's property to himself, unless he is expressly authorized to do so in the power of attorney" and finding that § 404.710.6(3) requires "written authorization").

There is no factual dispute that the Durable Power of Attorney does not grant Ms. Bennett-Harper the authority to make a change to the beneficiary designation. In order for a change of

beneficiary by Ms. Bennett-Harper to be lawful, Mr. Bennett would have had to amend his Durable Power of Attorney. Or, Mr. Bennett could have made the beneficiary designation changes himself.

Missouri Code section 404.714 provides that an attorney-in-fact is under a duty to avoid conflicts of interest and "shall exercise a high degree of care in maintaining, without modification, any estate plan which the principal may have in place, including, but not limited to, arrangements made by the principal for disposition of assets at death through beneficiary designations . . . ." Mo. St. Ann. § 404.714.1. The general power granted in Mr. Bennett's Durable Power of Attorney and relied upon by Ms. Bennett-Harper to change the primary beneficiary of Mr. Bennett's life insurance Policy is insufficient under Missouri law to grant authority to the attorney-in-fact to change a designated beneficiary.

Accordingly, the Court finds as a matter of law that Ms. Bennett-Harper acted without the authority of the Power of Attorney when she made both requests to change the beneficiary designation to the life insurance Policy on January 18, 2010, and January 19, 2010, in violation of § 404.710 and § 461.035 of the Missouri Code. Therefore, the beneficiary designations made by Ms. Bennett-Harper first to herself on January 18, 2010, and then to her daughter on January 19, 2010, are invalid. Mrs. Vivian Bennett remains the proper and legal beneficiary of the proceeds of Mr. Bennett's Midland National life insurance Policy. The full proceeds of Sylvester Bennett's life insurance policy in the amount of $46,192.36 are payable to Mrs. Vivian Bennett.

### D. Bad Faith

In the Crossclaim and Third-Party Claim, Mrs. Bennett alleges that Ms. Agnew and Ms. Bennett-Harper colluded in an attempt to obtain proceeds of Mr. Bennett's life insurance policy. Mrs. Bennett also alleges that Ms. Bennett-Harper breached her fiduciary duty under the power of

16

attorney first by naming herself and then by naming her daughter as the beneficiary of the Insured's policy. Finally, Mrs. Bennett alleges that Ms. Bennett-Harper acted in bad faith and otherwise dishonestly when she changed the beneficiary of Mr. Bennett's life insurance Policy to herself and then to her daughter. In the instant Motion for Summary Judgment, Mrs. Bennett asks the Court to find that Ms. Bennett-Harper acted in bad faith under Missouri Code § 404.717.5.

When a person is granted power of attorney to act as attorney-in-fact for a principal and that power is abused, Missouri law holds that attorney-in-fact accountable for her actions. Missouri Code § 404.717.5 provides:

> As between the principal and any attorney in fact or successor, if the attorney in fact or successor undertakes to act, and if in respect to such act, the attorney in fact or successor acts in bad faith, fraudulently or otherwise dishonestly, or if the attorney in fact or successor intentionally acts after receiving actual notice that the power of attorney has been revoked or terminated, and thereby causes damage or loss to the principal or to the principal's successors in interest, such attorney in fact or successor shall be liable to the principal or to the principal's successors in interest, or both, for such damages, together with reasonable attorney's fees, and punitive damages as allowed by law.

Mo. St. Ann. § 404.717.5. Mrs. Bennett argues that Ms. Bennett-Harper caused her, Mr. Bennett's successor, damage by requesting two invalid changes of beneficiary designation and consequently preventing Mrs. Bennett from rightfully receiving the proceeds of her husband's life insurance benefits. Mrs. Bennett asserts that the unauthorized conduct was fraudulent and constitutes a dishonest, intentional act that was conducted in bad faith.

More specifically Mrs. Bennett contends that Ms. Bennett-Harper acted in bad faith by first knowingly signing the Power of Attorney, which lacked any authority to change life insurance beneficiaries, and then fraudulently changing the beneficiary designation on two occasions. First, Ms. Bennett-Harper changed the beneficiary designation to herself on January 18, 2010. For reasons

17

unknown to the Court, Ms. Bennett-Harper then changed the beneficiary designation to her daughter, Ms. Agnew, the following day. All of this occurred just days before Mr. Bennett passed away after suffering from terminable cancer. Mrs. Bennett argues that there is no evidence that Mr. Bennett intended to grant either generally or specifically to Ms. Bennett-Harper the power to make a change to the beneficiary designation on the Insured's life insurance policy. However, as set forth above, Ms. Bennett-Harper has submitted her sworn affidavit that Mr. Bennett verbally requested she change the beneficiary to Ms. Agnew. Although the timeline of events alone makes Ms. Bennett-Harper's actions appear suspicious and notwithstanding the self-serving nature of her affidavit, the Court cannot say on the record before it that Ms. Bennett-Harper acted in bad faith as a matter of law.

Accordingly, the claim of bad faith in violation of § 404.717.5 and the associated claims for attorney fees, compensatory damages, and punitive damages remain for trial. *See Taylor-McDonald v. Taylor*, 245 S.W.3d 867, 881 (Mo. Ct. App. 2008).

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS in part** and **DENIES in part** the Motion for Summary Judgment [DE 44].

The Court **ORDERS** that the full proceeds of Sylvester Bennett's life insurance policy in the amount of **$46,192.36** are payable to Mrs. Vivian Bennett and **DIRECTS** the Clerk of Court to pay the money deposited with the Clerk of Court by Midland National in this cause of action to Mrs. Vivian M. Bennett.

The Court **REAFFIRMS** the final pretrial conference for **December 2, 2011**, and the bench trial setting of **December 20, 2011**, only on the issue of bad faith and any resulting attorney fees, compensatory damages, and punitive damages.

SO ORDERED this 17th day of November, 2011.

                                                  s/ Paul R. Cherry
                                                  MAGISTRATE JUDGE PAUL R. CHERRY
                                                  UNITED STATES DISTRICT COURT

cc:     All counsel of record